THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TER-
RENCE J. GALBA, Defendant-Appellant.

Third District No. 3—94—0662

Opinion filed June 23, 1995.

Verlin R. Meinz, of State Appellate Defender's Office, of Ottawa, for ap-
pellant.

Gary L. Spencer, State's Attorney, of Morrison (John X. Breslin and
Terry A. Mertel, both of State's Attorneys Appellate Prosecutor's Office, of
counsel), for the People.

PRESIDING JUSTICE STOUDER delivered the opinion of the
court:

The defendant, Terrence J. Galba, appeals from a judgment find-
ing him a sexually dangerous person under the provisions of the
Sexually Dangerous Persons Act (the Act) (725 ILCS 205/0.01 et seq.
(West 1994)). The finding was the result of a plea agreement which
the defendant claims was contrary to the Act and the interpreting
case law. The defendant also alleges the State failed to show the two
examining psychiatrists were "qualified" as that term is defined
under section 4.01 of the Act (725 ILCS 205/4.01 (West 1994)). We re-
verse and remand.

The defendant was charged by criminal complaint with ag-
gravated kidnapping (720 ILCS 5/10—2(a)(2) (West 1994)) and ag-

gravated criminal sexual abuse (720 ILCS 5/12—16(c)(1) (West 1994)). The bases for the charges were allegations that the defendant, posing as a family friend, removed a child from a Whiteside County elementary school, took that child to the defendant's residence and sexually abused the child. After the complaint was filed, the State brought a petition pursuant to section 3 of the Act (725 ILCS 205/3 (West 1994)) alleging the defendant was a sexually dangerous person and requesting an order appointing two qualified psychiatrists to examine the defendant. A two-count information was thereafter filed in place of the complaint.

On June 21, 1994, a hearing was held on the petition and the underlying information. It had been agreed prior to the hearing that the defendant would stipulate to the reports of the two examining psychiatrists, which found, to a reasonable degree of medical certainty, that he met the criteria of a sexually dangerous person as defined in the Act (see 725 ILCS 205/1.01 (West 1994)). The defendant also was to admit to the facts supporting a finding that he was a sexually dangerous person. In addition, under the agreement, the defendant agreed to plead guilty to both counts in the information and to be sentenced to the maximum term for each offense.

After being admonished as to his rights, and questioned as to whether he agreed to each of the provisions of the agreement concerning the dangerousness petition, the court found the defendant to be a sexually dangerous person. The court committed him to the custody of the Director of the Department of Corrections for an indefinite term. The Director was appointed the defendant's guardian.

Immediately after making this finding, the circuit court addressed the defendant's guilty pleas. After fully admonishing the defendant, the court found the pleas of guilty were knowingly and intelligently made and that there was factual support therefor. The defendant waived a sentencing hearing and presentence report. The court entered a judgment sentencing the defendant to 15 years in prison for aggravated kidnapping and 7 years in prison for aggravated criminal sexual assault, the maximum for both offenses.

At the hearing, it was pointed out to the defendant that his indefinite commitment as a sexually dangerous person ran concurrent with his sentences on the criminal offenses. Thus, if he was found to no longer be a sexually dangerous person prior to expiration of his sentences on the criminal charges, he would be transferred to a different facility within the Department of Corrections to complete the remainder of his sentences. On the other hand, even after his criminal sentences had expired he could still be held as a sexually dangerous person, as long as there was no finding that he was no longer sexually dangerous.

On appeal, the defendant contends the order finding him a sexually dangerous person should be vacated because it is the product of a plea agreement which is contrary to the Act and case law. The defendant argues the Act contemplates that a commitment as a sexually dangerous person is a nonpunitive treatment alternative to a prosecution of a defendant for his actions. Thus, a defendant cannot be committed as a sexually dangerous person and simultaneously criminally punished for the same underlying acts giving rise to the finding of dangerousness. We agree.

Initially, we note the State challenges our jurisdiction to address this argument by claiming that the defendant failed to appeal from his guilty pleas to the underlying charges. We are mystified by this assertion because the defendant is only challenging the judgment which found him to be sexually dangerous. The defendant raises no challenge to his guilty pleas. The defendant's notice of appeal only raised a challenge to the judgment finding him a sexually dangerous person.

Also at the outset, we must emphasize that we are presented with a direct appeal from an initial commitment proceeding in which the defendant has been both committed as sexually dangerous and convicted of the offense underlying the dangerousness finding. The defendant was charged with only one sexual offense. The principal cases relied on by the State and the defendant all concern revocation of a conditional release or denial of an application for release. (See *People v. Patch* (1972), 9 Ill. App. 3d 134, 293 N.E.2d 661; *People v. Burkhart* (1983), 116 Ill. App. 3d 708, 452 N.E.2d 375; *People v. Oetgen* (1995), 269 Ill. App. 3d 1000, 647 N.E.2d 1083.) There is apparently no case directly on point; therefore, the exact question before us has never squarely been addressed by a court of review.

The defendant places principal reliance on *People v. Patch* (1972), 9 Ill. App. 3d 134, 293 N.E.2d 661. In *Patch*, the defendant was found to be a criminal sexual psychopathic person under "An Act to provide for the commitment and detention of criminal sexual psychopathic persons" (Ill. Rev. Stat. 1947, ch. 38, par. 820 *et seq.*). This was in 1947. In March 1966, the defendant was granted a conditional release under section 9 of the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1965, ch. 38, par. 105—9). *Inter alia*, the defendant was subject to the supervision of the Director of the Department of Public Safety for a period of five years.

Three days after his release, the defendant was charged with deviate sexual assault. The defendant pled guilty to the charge and was sentenced to prison in 1967. Four years later, the State's Attorney of Lee County filed a petition to revoke the defendant's

conditional release order and requested the defendant's recommitment. The defendant was in prison at the time.

After a hearing in August 1971, the circuit court denied the State's request to revoke the conditional release order, finding the five-year term of the order had expired. However, the court granted the request that the defendant be recommitted. The court reasoned that the defendant's conduct within 24 hours of his release in March 1966 established he had not recovered and that he was still a criminal sexual psychopathic person *at the time of his release.*

On appeal, the *Patch* court noted there was no procedure in the statute for obtaining a discharge after a defendant has been conditionally released. However, the court agreed with the State that it was necessary to obtain a further order granting an absolute discharge unless the conditional release order so provided. Therefore, the *Patch* court found the defendant had not been automatically discharged at the expiration of the five-year term of the conditional release order. Though making this finding, the court found the defendant's recommitment was improper.

The court noted the discretionary nature of the decision to file a petition and the provisions of section 9 providing for criminal charges being quashed when a person is discharged (Ill. Rev. Stat. 1969, ch. 38, pars. 105—3, 105—9). The court stated, "The State cannot first obtain a conviction for a criminal offense and then proceed to commit the accused as sexually dangerous for the same incident." (*Patch*, 9 Ill. App. 3d at 138.) For this proposition, the *Patch* court cited *People v. Redlich* (1949), 402 Ill. 270, 83 N.E.2d 736.

The *Patch* court reasoned that the State could have pursued a revocation of the conditional release in 1966 based on the defendant's act of deviate sexual assault. Instead, at the time, the State chose to prosecute Patch for the crime. The court concluded, "We are of the opinion that a person cannot be committed as sexually dangerous, or recommitted after a conditional release, on the basis of the same act for which he has been convicted in a criminal prosecution." *Patch*, 9 Ill. App. 3d at 138.

The decision and reasoning in *Patch* have subsequently come under question. (See *People v. Cooper* (1988), 177 Ill. App. 3d 942, 532 N.E.2d 1022; *People v. Oetgen* (1995), 269 Ill. App. 3d 1000, 647 N.E.2d 1083.) This is primarily because the case relied on by the *Patch* court, *i.e., Redlich*, concerned a statute different from the present Act. The previous statute (the one Patch was apparently initially committed under) was chiefly concerned with committing sexual psychopaths until they were sufficiently recovered to stand trial. Thus, if the person were already convicted of the crime, there would be no need

to proceed with commitment proceedings. The current Act, on the other hand, is concerned with the treatment of the offender and the protection of the public. The *Patch* court failed to note the different purposes behind the two statutes in citing *Redlich* as authority.

Thus, in the area of recommitment proceedings, the *Patch* decision now appears to carry little weight. However, the *Patch* court was not presented with an initial commitment proceeding in which the State was attempting both to commit the defendant and convict the defendant based on the same act.

The two cases relied on by the State in this case are also readily distinguishable. In *People v. Burkhart* (1983), 116 Ill. App. 3d 708, 452 N.E.2d 375, the circuit court denied the defendant's application alleging he had recovered. On appeal, the defendant, *inter alia*, attacked his original commitment claiming the order was void. Though the order was final, the court addressed the issue since a void order can be attacked at any time. (See *Filosa v. Pecora* (1974), 18 Ill. App. 3d 123, 309 N.E.2d 356.) The appellate court specifically stated it was not addressing the situation we find in the present case, *i.e.*, the same conduct as the basis for a criminal prosecution and a dangerousness proceeding.

In *Burkhart*, the defendant was initially charged in a six-count indictment. The defendant, pursuant to a plea agreement, entered a plea of guilty to one count and was also found to be sexually dangerous. The five remaining counts were pending at the time the court found the defendant sexually dangerous.

The appellate court did not analyze the issue presented in light of the provisions found in section 9 of the Act (725 ILCS 205/9 (West 1994)). Instead, the court's analysis focused solely on the apparent requirement found in section 3 of the Act (725 ILCS 205/3 (West 1994)) that charges be pending at the time of the initial finding of sexual dangerousness. Since there were five counts outstanding at the time of the dangerousness finding, there was no section 3 problem.

In addition, the court noted the State, in alleging the defendant was sexually dangerous, was relying on several acts of the defendant in addition to the charge on which he was convicted. The court observed it was not confronted with a case in which the accused was committed for the same conduct for which he was convicted in the underlying criminal proceeding. Thus, the *Burkhart* court was not addressing the issue presented to us in the instant case.

*People v. Oetgen* (1995), 269 Ill. App. 3d 1000, 647 N.E.2d 1083, concerned revocation of a conditional release. In *Oetgen*, following his initial commitment, the respondent had been conditionally released. The State filed a petition to revoke based on allegations that the re-

spondent had violated the conditions of his release when he was charged and later pled guilty to public indecency. This court held the guilty plea was no bar to revocation of his conditional release based on the same act. We compared this situation to a probation revocation wherein a person may be criminally prosecuted for an offense and have his probation revoked premised on the same offense. (See *People v. Vahle* (1978), 60 Ill. App. 3d 391, 376 N.E.2d 766.) We noted the issue was whether the respondent violated the conditions of his release. In the recommitment proceeding he was not being prosecuted for public indecency.

The *Oetgen* court was not presented with an initial commitment proceeding as in the instant case. Nor were the provisions of section 9 raised or addressed in *Oetgen*. In fact, we do not know the status of the charges which served as the basis for Oetgen's original commitment.

Section 10 of the Act (725 ILCS 205/10 (West 1994)) provides that in the event a person violates any condition of the release order, the court must revoke the conditional release and recommit the person. Thus, in the context of a conditional release revocation, the only issue facing the court is whether the defendant has violated the terms of his release. (*People v. Cooper* (1989), 132 Ill. 2d 347, 547 N.E.2d 449.) In an initial commitment proceeding, on the other hand, the underlying charge is an element in the determination of dangerousness, in that the State must prove the person has "demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children." See 725 ILCS 205/1.01 (West 1994).

As for the Act itself, we note the Director of the Department of Corrections as guardian is mandated to provide care and treatment designed to effect recovery. (725 ILCS 205/8 (West 1994).) In *People v. Allen* (1985), 107 Ill. 2d 91, 481 N.E.2d 690, our supreme court confirmed that proceedings under the Act were civil in nature in light of the fact that treatment, not punishment, is the aim of the statute. (See also *Allen v. Illinois* (1986), 478 U.S. 364, 92 L. Ed. 2d 296, 106 S. Ct. 2988 (when Illinois files a petition against a person under the Act, it intends to proceed in a nonpunitive, noncriminal manner).) The purpose of the Act is to give the defendant an opportunity to receive help for his propensity to commit sexual offenses and to protect the public from the defendant until release is deemed desirable. *People v. Burkhart* (1983), 116 Ill. App. 3d 708, 452 N.E.2d 375.

Section 9 of the Act sets forth the procedure by which a person can be found no longer sexually dangerous. If such a finding is made, the court must order that person discharged. The last sentence of sec-

tion 9 provides: "Upon an order of discharge every outstanding information and indictment, the basis of which was the reason for the present detention, shall be quashed." 725 ILCS 205/9 (West 1994).

Thus, the Act contemplates that proceedings to commit are in lieu of a criminal prosecution. The State makes a determination to seek civil remedies—the treatment of the defendant—rather than criminal punishment. The underlying charges remain until the defendant is successfully treated. At which time, the Act mandates that those underlying charges be dismissed. If the State were allowed to simultaneously prosecute an individual on the charges underlying a commitment proceeding, the last sentence of section 9 would be meaningless. We are commanded to avoid construing a statute so as to render portions thereof superfluous or meaningless. *Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 561 N.E.2d 656.

The Sexually Dangerous Persons Act allows the State the discretion to seek the treatment of an alleged sex offender, rather than prosecute. When the individual has recovered and he is discharged, section 9 of the Act mandates that the underlying information or indictment be quashed. Therefore, in light of the purposes of the Act and the provisions of section 9, the court below erred in finding the defendant a sexually dangerous person and entering a conviction on the same underlying charges which served as the basis of the dangerousness finding.

Given our disposition of the above issue, we need not address the defendant's contention that the State failed to establish that Drs. Thampe and Aagesen were not "qualified psychiatrists" as defined by the Act.

For the foregoing reasons, the judgment of the circuit court of Whiteside County is reversed.

Reversed.

LYTTON and HOLDRIDGE, JJ., concur.